Argued May 15; petitioner disbarred July 2, 1946

In re McALEAR
(170 P. (2d) 763)

Robert A. Bennett, of Portland, for Board of Governors of the Oregon State Bar.

Ralph E. Moody, of Salem, for petitioner.

Before BELT, Chief Justice, and ROSSMAN, BAILEY, BRAND and HAY, Justices.

ROSSMAN, J.

The Board of Governors of the Oregon State Bar has placed before us its recommendation that the

defendant, who on September 11, 1940, was granted the privilege of practicing law in this state, be suspended from the privilege for six months. The recommendation is made by eight of the twelve members of the board. One member for sound reasons deemed himself disqualified. Three others declined to concur in the recommendation. Their views are unknown to us.

The complaint against the defendant contains four counts:

The first alleges that the defendant, in a cause in which he represented two elderly women, deducted as his fee from the sum which he recovered for them one-half thereof, whereas he had agreed in a written contract to perform the service for one-third of the recovery.

The second alleges that the defendant forged his wife's signature (Stasia McAlear) to a deed which described a tract of land situated in the State of Montana, the title to which stood in her name. A further averment says that after the defendant had made the forgery and had signed his own signature to the deed, he falsely represented to Mr. Charles Taff, a notary public, that both signatures were genuine and thereby procured Mr. Taff's notarial jurat to the acknowledgment. Finally, this count alleges that the defendant delivered the deed to the grantee as a valid instrument.

The third count is expressed in language similar to the second, with the exception that it pertains to a tract of land the title to which reposed in the defendant's name. It, too, was situated in the State of Montana.

The fourth count charges that after the defendant had taken the course delineated in counts two and

three, the grantees of the deeds delivered to him a bank check in the sum of $2,242.29 which represented the balance due from them upon the purchase price of the two tracts. The check, according to this count, was payable to J. H. and Stasia McAlear. It is charged that after the defendant received the check he endorsed upon its reverse side, not only his own signature, but also his wife's forged signature, and then collected the sum for which it was drawn.

The Board of Governors found the defendant not guilty of the first charge. We have read the record carefully and concur in the finding.

The defendant was admitted to the Montana bar June 15, 1926, and at once began the practice of law in Chester, Montana. A year later he became married. His mind was well adapted to the law and he met with success. We observe that while he practiced in Chester he was county attorney for twelve years and city attorney for even a longer period. He and his wife, whose true Christian name is Anastasia, became the parents of two boys whose ages are now sixteen and eighteen. Some time after their marriage the defendant and his wife acquired the two tracts of land which are mentioned in counts, two, three and four. The purchasers who gave the defendant the check which constitutes the subject matter of count four paid for the two tracts $6,000.

In 1940 the defendant and his family left Montana and moved to Hillsboro in this state. In September of that year he was admitted to the practice of law in this state and thereupon entered into an association with his uncle, E. J. McAlear, who for many years has practiced law in Hillsboro. The uncle bears a good reputation as a man and as a lawyer. Three months

later the defendant left his uncle's office and established an office of his own in McMinnville. His family moved to that city with him. He remained in McMinnville until June of 1943, when he moved to Reno, Nevada, where he still resides. He is now 45 years of age, and is seeking admission to the Nevada bar. Mrs. McAlear and two sons still live in McMinnville.

The defendant, in the course of the hearing before the trial committee, conceded that (1) he signed his wife's name to the two deeds and to the back of the check; (2) he induced Mr. Charles Taff, a lawyer and notary, to believe that the signature upon the deeds, which purported to be that of the defendant's wife, was her genuine signature and to place his notarial jurat to the acknowledgment; (3) he sent the deeds, after the steps just described had been taken, to the contract purchasers and they, upon receipt of the deeds, believed that the signature "Stasia McAlear" was the genuine signature of the defendant's wife; (4) the grantees of the deeds after receipt of the latter sent a check to the defendant in the sum of $2,242.29, payable to J. H. and Stasia McAlear, in payment of the balance of the contract price; (5) upon receipt of the check he wrote upon the back of it, not only his own signature, but also that of his wife, and then wrote under the two names: "Pay to the Great Falls National Bank, Great Falls, Mont., or order for deposit, J. H. McAlear"; (6) after all of the above had been done he sent the check to the Great Falls bank for collection with instructions to deposit its proceeds to his credit; and (7) the check was paid and its proceeds were credited to his account. When the defendant sent the check to the Great Falls bank he had a bank account in McMinnville and later drew a check against

the Great Falls bank for a part of the $2,242.19 to be deposited in his McMinnville account. At all of the above times the defendant's wife was living in McMinnville. The two were estranged but the defendant knew where his wife resided and spoke to her frequently. In fact, as he himself freely conceded, he requested his wife to sign the two deeds, but she refused to do so unless the balance of the purchase price which would be paid upon their delivery would be set aside for the benefit of their two sons. The wife, as the defendant conceded, suggested that the money be paid to the defendant's brother, uncle or some other responsible person in trust for the boys.

We have read all of the evidence carefully and have examined the exhibits. Particularly have we given considerate attention to the part of the record which portrays the defendant's explanation of his conduct. He claims in part that shortly before he signed the deeds he called his wife to his office and urged her to execute the deeds. According to him, he grew vehement as he continued his plea for her signature. Although Mrs. McAlear contradicted him and swore that no such meeting occurred, the defendant testified that the conference was a protracted one "and pretty soon we were hammering on the table, and we were yelling, and I said to her, I said, 'You will sign these deeds, damn you,' I said, 'or I'll sign them for you.'" He swore that shortly his wife said, "If you feel that way about it, you go ahead." In that way the defendant claims he was given authority to sign the deeds. Mrs. McAlear denied that the argument occurred, and expressly denied that the above words were spoken. Some months before she testified the parties had effected a property settlement and she had been

awarded a decree of divorce including an award of the custody of the two boys. She appeared in the disbarment hearing only because she was subpoenaed and, manifestly, testified against her pecuniary interest. We think that her testimony reflects the truth.

Although one of the unwelcome tasks which the judicial office imposes is the disbarment of an attorney, we can not accept as justification for his action the various explications which the defendant gave for his action. We are satisfied (1) that without any authority from his wife he forged her signature to the check and to the two deeds; (2) he deceived Mr. Taff into affixing his notarial jurat to the acknowledgment of the deeds; (3) he deceived the two grantees of the deeds into believing that the signatures were genuine and into thereby parting with their money; (4) he deceived the Great Falls bank into believing that the signature "Stasia McAlear" upon the back of the check was her signature and into thereby becoming a purchaser of the check; and (5) he deceived the bank (The Hill County State Bank of Havre, Montana) upon which the check was drawn, into believing that the endorsements were valid and into paying the check to the Great Falls bank.

Forgery is a crime of a very serious nature. It involves deceit. It is a favorite of those who would obtain money by false pretenses. In the present instance, not only was the wife the victim of the defendant's wrongful conduct, but the two banks and the contract purchasers became innocent dupes of his, so that money in which his wife had an interest would never reach her hands. Neither the banks nor the grantees would have taken the course they pursued had they known that the instruments in their hands bore signatures which

were forged. It has been only the forbearance of Mrs. McAlear which has saved the grantees and the banks from losses.

We said that forgery is a serious crime. When it is accompanied by deceitful conduct whereby a forged signature gains the jurat of a notary public, the magnitude of the crime is increased and confidence is undermined in our system of conveyancing. There can be no excuse for this defendant. He was for twelve years a prosecuting attorney in Montana and knew when he took his criminal course of action that disbarment would be one of its consequences.

The defendant's claim that he was flushed with anger when he forged his wife's signature and that matrimonial discord was another impelling circumstance, might be lent a sympathetic ear if he now displayed remorse. But neither the testimony which he gave before the trial committee nor the briefs which he has presented to this court display any indication that he realizes that his conduct was grossly wrong. To the contrary, he claims that what he did was right. For instance, as a witness before the trial committee, he said: "I have no guilty conscience about signing her name * * * none whatever." That was not a slip of the tongue. Those words were later repeated— more than once. The defendant's brief says: "The one error that Mr. McAlear made was that the acknowledgment to these two deeds should not have been taken in the informal manner they were." Any man who entertains such beliefs certainly should not be authorized under a license of this court to advise clients.

Section 47-501, O. C. L. A., says:

"An attorney may be removed or suspended by the supreme court for either of the following causes, arising after his admission to practice: * * *

"(3) For being guilty of any willful deceit or misconduct in his profession; * * *."

Section 47-502, O. C. L. A., says:

"Any member of the bar of this state shall be disbarred by the supreme court, upon proper proceedings for that purpose, whenever it shall appear to that court that his conduct has been such that if he were then applying for admission to the bar his application should be denied."

■ We think the defendant willfully deceived his fellow practitioner, Charles Taff, and that the decit was committed in the course of a professional relationship. The defendant's conduct concerning the notarial jurat alone warrants disciplinary action. *Ex parte Finn,* 32 Or. 519, 52 P. 756, 67 Am. St. Rep. 550; and see the annotations in 9 A. L. R. 196, and 43 A. L. R. 108.

■ The defendant argues that his conduct in forging his wife's name to the check and deeds can not be deemed a basis for disciplinary action against him because his conduct in that respect was not committed in a professional capacity and is not evidenced by a judgment of guilty entered in a criminal prosecution. A judgment of guilty was not necessary. *State ex rel. v. Mannix,* 133 Or. 329, 288 P. 507, 290 P. 745; *State ex rel. v. Woerndle,* 109 Or. 461, 209 P. 604, 220 P. 744; and *State ex rel. v. Estes,* 105 Or. 173, 209 P. 486. The purpose of the evidence concerning the defendant's forgery of his wife's signature was not to show that he had committed a crime, but to show that he was unfit to manage the affairs of others. We are satisfied that it was admissible, even though not evidenced by a judgment of guilty. We are also satisfied that it shows him unfit for the practice of the law.

■ The question now occurs as to whether or not we should adopt the recommendation of the Board of Gov-

ernors and suspend the defendant from the practice of law for a period of six months. We think that the defendant's course of conduct was flagrantly wrong. Although we are not interested in the matrimonial strife in which the defendant became involved and hold nothing against him on account of that fact, yet he had no right to defraud Mrs. McAlear no matter how much he may have disliked her. Our primary interest is in the fact that the defendant deceived Mr. Taff, the two grantees and the two banks. In fact, since it appears that the deed transactions passed through the hands of an escrow agent, it seems that the latter must also have been imposed upon. The defendant's conduct was studied and covered several days. He employed to his unwarranted purposes title instruments of the kind that all attorneys instinctively deem genuine. They bore the notarial jurat of an honored member of our profession who had been deceived. Fraud and deception employed in the procurance of notarial jurats can not be tolerated. They must be stricken down or conveyancing will become hazardous. We think that nothing less than complete disbarment will suffice. An order will be entered striking the defendant's name from the roll of the attorneys of this state.