Submitted on record and brief November 7,
accused suspended for six months November 27, 1979

In Re: Complaint as to the Conduct of
## PAUL J. BOLAND,
*Accused.*

(OSB No. 77-21, SC 26335)

William J. Keys and Douglas M. Fellows, Oregon State Bar, Portland, filed the brief for petitioner.

No appearance contra.

PER CURIAM.

## PER CURIAM.

This is a disciplinary proceeding by the Oregon State Bar. The charges alleged in the complaint against the accused include:

(1) Failing and neglecting, without reasonable excuse, to appear in the United States District Court on behalf of one Leonard E. Bryant, on whose behalf the Accused had filed an action in that court and by permitting that action to be dismissed for lack of prosecution, contrary to Disciplinary Rules 6-101(A)(3) and 7-101(A)(2) and (A)(3) of the Code of Professional Responsibility.[1]

(2) Failing and neglecting, without reasonable excuse, to appear in the Clackamas County District Court for the trial of Gregory A. Spores, who had been charged with driving under the influence of intoxicating liquors, after agreeing to represent Mr. Spores in that proceeding, also contrary to DR 6-101(A)(3) and 7-101(A)(2) and (A)(3).[1]

(3) Neglecting, without reasonable excuse, to carry out his contract of employment by Mr. and Mrs. William Hindman to represent them in a civil proceeding filed against them in the Clackamas County District Court by permitting a default judgment to be entered against them.

The Trial Board, after reviewing the evidence in a written opinion, made findings of fact that the accused

---

[1] Disciplinary Rule 6-101 of the Code of Professional Responsibility provides:

"A lawyer shall not:

"* * * * *

"(3) Neglect a legal matter entrusted to him."

Disciplinary Rule 7-101 provides: .

"A lawyer shall not intentionally:

"* * * * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

[135]

was guilty of all three of these charges.[2] The Trial Board recommended that the accused receive a public reprimand and be suspended from the practice of law for a period of three years; provided, however, that "the latter sanction be imposed only if during such period he fails to fulfill [various recommended] conditions of probation."

The Disciplinary Review Board, however, in a written opinion, expressed the view that the recommendation of the Trial Board "fails to reflect the seriousness of the Accused's misconduct," and recommended that the Accused be suspended from the practice of law for a period of six months without the fulfillment of any conditions, based upon its opinion that:

> "These incidents did not happen by reason of excusable neglect. Instead, each of them constituted a deliberate decision by the Accused not to further represent his clients and a failure to notify them, opposing counsel, and in one instance, the court, of his intended withdrawal from the case."

The brief filed by the Oregon State Bar in this court contends that this recommendation should be affirmed. No responding brief has been filed by or on behalf of the Accused, and this matter has been submitted on the record and without oral argument.

*The Bryant Matter*

In addition to the facts as testified by Mr. Bryant, which support the charge against the Accused in this matter, the following facts were admitted by the Accused:

> (1)   That he agreed to file an action in the United States District Court on behalf of Mr. Leonard Bryant and that the "fee basis" was to be an hourly rate of $30 plus costs.
>
> (2)   That he knew that Mr. Bryant wanted to pursue the case but that he, the Accused, apparently

---

[2] The Trial Board found, however, that the accused was not guilty of engaging in discourteous conduct to a judicial tribunal, as also charged in the Spores matter.

[136]

believed that the case would be too expensive for Mr. Bryant.

    (3) That Mr. Bryant sought on numerous occasions to contact the Accused, but that the Accused "never got back to him."

    (4) That he later told opposing counsel that he could not locate his client and understood that this was communicated to the court.

    (5) That he failed to appear before the court on two "call dates" for the case and knew that if he did not appear the case would be dismissed for want of prosecution.

    (6) That the Accused understood that he was the attorney of record and was required to appear at the "call dates" and also at a subsequent show cause order hearing.

    (7) That the Accused took no steps to attend the hearing on the order to show cause or to prevent dismissal of the action.

It also appears to be clear that the Accused did not advise Mr. Bryant that the dismissal of the case was pending or, later, that the case had been dismissed. He also did not seek to withdraw as counsel, nor did he advise Mr. Bryant of his intention not to pursue the case so as to afford Mr. Bryant the opportunity to obtain another attorney.

*The Spores Matter*

Mr. Gregory Spores was a client of the Accused on a domestic relations matter. He was arrested on August 3, 1977, on the charge of driving under the influence of intoxicants. Mr. Spores, himself, entered a plea of not guilty on August 4, 1977, and was notified that his case would be tried on January 17, 1978, at 9:30 a.m.

About three weeks prior to the trial date, Mr. Spores met with the Accused in his office to discuss the traffic citation. Mr. Spores testified that he gave to Mr. Boland the traffic citation and the "Breathalyzer Test Record." According to Mr. Spores, fees were not discussed for that particular matter but he already had an outstanding account with the Accused.

Mr. Spores also testified that the Accused later told him to be at the courthouse one-half hour early on the date set for trial, but that the Accused did not appear at that time; that, as a result, Mr. Spores was required to go to trial without counsel and was found guilty, and that at no time did the Accused indicate that he would not appear on the case unless a fee was paid in advance.

The Accused testified that he was never Mr. Spores' attorney on this matter and that he did not show up at the trial because "I didn't feel that I represented Mr. Spores."

It is clear from the record, however, that Mr. Spores was justified in thinking that the Accused was his attorney based upon the Accused's actions. These actions included:

(1) Writing the Clackamas County District Attorney's Office on January 5, 1978, requesting discovery.

(2) Telling Mr. Spores that he would ask for the police reports and that they would then "get together."

(3) Calling Mr. Spores about the trial one week before January 17, 1978.

In addition, the Accused made the following admissions:

(1) That he wrote the letter to the District Attorney requesting discovery and billed Mr. Spores $15 for writing that letter.

(2) That when Mr. Spores appeared for trial on January 17, 1978, the Accused did not appear.

(3) That Mr. Spores believed the Accused was going to defend him at trial and that "It's probably reasonable that he did, I guess, I don't know."

### The Hindman Matter

The Accused handled a bankruptcy proceeding for Mr. and Mrs. William Hindman. Thereafter, one of the secured creditors in the bankruptcy proceeding attempted to repossess the secured property and found

that some of it was missing. The secured creditor assigned its rights to a collection agency, Bonded Credit, who made demand upon the Hindmans for over $1000 and served them with a complaint and summons, which they delivered to the Accused.

The Accused obtained an extension of time to file an appearance in the proceeding and wrote the Hindmans, reminding them that he had been paid nothing on the $250 due and owing on the bankruptcy, and further advised that, "Before I make another appearance in any other matter, I would request a substantial payment on the amount presently due and owing, preferably all of it, if this would be possible." That letter was dated July 1, 1975. Subsequently, he was paid at least $100 by them.

The Accused entered into negotiations with Bonded Credit to settle the matter and apparently had some difficulty in communications with the Hindmans relating to possible settlement offers. They apparently did not respond to two letters sent to them, and he testified that he thought that they must have settled the matter themselves.

A default judgment was obtained on March 3, 1976, by Attorney Brian O'Brien, who represented the collection agency. Mr. O'Brien stated that his file reflects that he made written demand upon the Accused to make an appearance in this suit; and when he failed to make such appearance, the default was taken. In addition, execution was levied under that judgment and wages of Mr. Hindman were garnisheed.

The Accused states that he has no recollection of any such demand to make an appearance, nor does his file contain a copy of that letter. He made no subsequent attempt, however, to set aside the default judgment.

The facts support the finding that the Accused had entered into a contract of employment with the Hindmans relating to this matter. Furthermore, even if his

contract of employment with them did not include an obligation to make an appearance in the matter, he was at least under a duty to notify the Hindmans of a potential default judgment against them.

Upon examination of the record, we agree with the opinion of the Disciplinary Review Board that the misconduct by the Accused, particularly in the Bryant and Spores matters, did not happen by reason of excusable neglect, but was the result of deliberate decisions by the Accused not to further represent clients in court proceedings in which he had undertaken to represent them. Because of the seriousness of the consequences of such misconduct, as reflected by the record in this case, we also agree with the recommendation by the Disciplinary Review Board that probation would not be appropriate, as recommended by the Trial Board, but that the Accused should be suspended from the practice of law for a period of six months.

For these reasons, the Accused is suspended from the practice of law in the State of Oregon for a period of six months from the entry of the mandate herein. The Oregon State Bar is awarded judgment against the Accused for its costs and disbursements.