Argued and submitted September 9,
accused suspended September 23, 1980

# In re Complaint as to the Conduct of
# HARRY R. KRAUS,
*Accused.*
## (OSB 78-41, SC 26690)
616 P2d 1173

John D. Ryan, Portland, argued the cause and filed the brief for the Accused.

William M. Keller, Portland, argued the cause for the Oregon State Bar. With him on the brief was Jarvis B. Black, Portland.

Before, Denecke, Chief Justice, and Tongue, Howell, Linde, Peterson and Tanzer, Justices.

PER CURIAM.

## PER CURIAM.

This is a disciplinary proceeding by the Oregon State Bar charging the Accused with (1) neglecting a legal matter entrusted to him by permitting a case to be dismissed for want of prosecution and with subsequently telling his client that the case had been set for trial, and (2) notarizing signatures purported to be those of that same client upon pleadings when, in fact, that client did not sign such pleadings and was not present when such signatures were notarized by the Accused.[1]

The Trial Board found the Accused not guilty of the first charge, but guilty of the second charge and recommended a public reprimand. The Disciplinary Review Board adopted the findings of fact and conclusions by the Trial Board with one exception, which will be discussed, and also recommended a public reprimand.

This case was originally submitted on the record without briefs or oral argument. It was then noted by this court that in 1964 the Accused had been previously suspended from the practice of law for three years for conduct which also included neglect of a legal matter entrusted to him. *In re Kraus,* 238 Or 482, 395 P2d 446 (1964). Apparently the Trial Board and the Disciplinary Review Board were unaware of that previous disciplinary proceeding.

This court then suggested that in view of that fact the parties consider filing briefs in this case. It was then stipulated by the parties that the record in that previous proceeding be submitted to this court for its consideration in this case. Both parties then submitted both briefs and oral argument.

### The First Charge.

In December 1971 the Accused prepared and filed in Multnomah County a complaint in an action

---

[1] The complaint also included the usual "cumulative" or "catch-all" charge. We find it unnecessary to consider that charge.

for breach of contract on behalf of Joe L. Wiese. The case was then transferred to Clackamas County. On January 8, 1974, in response to an order sustaining a motion to strike, the Accused prepared and filed an amended complaint, to which another motion to strike was made and allowed by order dated March 1, 1974. By that order plaintiff was granted 15 days in which to further plead.

On September 16, 1974, no further pleading having been filed by the Accused, the defendant filed a motion to dismiss the case for want of prosecution. A hearing on that motion was held on October 14, 1974, with the Accused being present. The motion was then overruled by order dated November 14, 1974, but with the condition that "if this case is not at issue within 30 days, said case shall be dismissed."

On that same day the Accused filed a second amended complaint. By letter dated November 13, 1974, the attorney for defendant wrote a letter to the Accused requesting information relating to plaintiff's claim for damages and stating that unless such information was received he would move again against one paragraph of the complaint. That letter also stated that the second amended complaint had realleged the same second cause of action as previously stricken and that unless the Accused responded within a reasonable time defendant would "prepare the necessary motions."

The Accused did not respond to that letter and, when no motion, answer or pleading was filed by defendant, did nothing to force the defendant to file an answer and did not move for a judgment by default. Indeed, it was candidly admitted by defendant that the case was "completely neglected by me."

On January 23, 1976, the case, together with a number of other cases, was dismissed by an order which recited that "each of the attorneys of record" had been "duly notified as provided by law by mailing a notice to his last known address more than 60 days prior to January 5, 1976, that unless some action was

taken on or before said date, the same would be dismissed for want of prosecution." The Accused testified that he had "searched," but had never seen such a card and that he did not learn that the case had been dismissed until he later received a telephone call from another attorney to whom Mr. Wiese, his client, had gone for advice.

Meanwhile, according to Mr. Wiese, on December 10, 1975, after being in Alaska for some time, he went to the office of the Accused "to find out what had happened, for him to bring me up to date on the matter," and was then "assured" by the Accused "that a trial date was imminent, he was just waiting for it to be assigned." Mr. Wiese also testified that in April 1976 he again talked with the Accused, who told him that "he had a trial date * * * on May 11th," and that shortly before that date he became concerned and, upon investigation, learned that the case had been dismissed.

The Accused testified, however, that he "never gave (Mr. Wiese) a trial date," but told him prior to April that "we should be able to get the matter heard by May" and that "again, I simply neglected to (sic) file after that."

The Accused was then sued for malpractice by Mr. Wiese and personally paid $5,123.97 for settlement of that case.

In finding the Accused not guilty on the first charge, the Trial Board, by "supplemental findings," found that although the Accused "knew or should have known that the case * * * was in imminent danger of being dismissed," it did "not believe that the Accused knowingly or willfully misrepresented the status of the case to his client."

The Trial Board also found that the Accused "did not properly handle the case for the client," and "readily admits that he was negligent * * *," but concluded that:

"* * * the negligent handling of the case is not the issue before it for the purposes of disciplinary action.

The gravaman of the issue is whether the conduct of the Accused, to-wit, knowingly misrepresenting the status of the case, was unethical. The testimony of the Client lacks credibility in this regard. The Trial Board does not believe that the Accused knowingly or willfully lied to his client."

The Disciplinary Review Board agreed with the findings by the Trial Board that the Accused did not "knowingly misrepresent the status of the case," but went on to state that in the first cause of action of the complaint there are two issues: (1) Whether the Accused knowingly misrepresented the status of the case and (2) whether the Accused was "guilty of a lack of diligence in the handling of the case." On that issue the Disciplinary Review Board found that although the Accused had been candid and "admitted and paid for the damages sustained * * * his lack of diligence in handling the matter entrusted to him remains." We agree.

As noted by the Disciplinary Review Board, Canon 6 of the Code of Professional Responsibility requires that a lawyer represent his client competently. Disciplinary Rule 6-101(A)(3) provides:

"A lawyer shall not
"* * * * *
"(3) Neglect a legal matter entrusted to him."

Neglect by an attorney of the affairs of a client, as distinguished from the competence of an attorney in handling the affairs of a client, has been held on numerous occasions by courts of other states to constitute grounds for disciplinary action against an attorney, either by suspension or reprimand, depending upon the particular facts and circumstances involved. *See* Anno. 96 ALR 2d 823 (1964). Recently this court suspended attorneys from the practice of law for neglecting, without reasonable excuse, the affairs of their clients. *See In re Boland,* 288 Or 133, 602 P2d 1078 (1979), and *In re Holm,* 285 Or 189, 590 P2d 223 (1979).

The facts in those cases may have been somewhat more aggravated than those of this case, and

there are some mitigating circumstances in this case in that the Accused admitted his negligence and has paid from his own pocket over $5,000 for damages suffered by his client as the result of his negligence. As held, however, in *In re Pierson,* 280 Or 513, 518, 571 P2d 907 (1977):

> "* * * discipline should not be dependent upon the lawyer's financial ability to rectify the results of his unethical conduct."

Also, as previously noted, this is the second time that the Accused has been the subject of disciplinary proceedings for neglect of legal matters entrusted to him as an attorney. *See In re Kraus,* 238 Or 482, 395 P2d 446 (1964). The charges of professional misconduct of which the Accused was then found guilty, according to the record in that proceeding, also included a charge of neglect of a legal matter entrusted to the Accused, of which the Accused was found guilty and was suspended from the practice of law for a period of three years. The charge of which the Accused was found guilty at that time, among others, was that the Accused had been employed to probate an estate and had been paid money for use in procuring a bond for the executrix and had later delivered to his client a copy of a purported order closing the estate when in fact no probate proceedings had been instituted, despite the fact that probate was necessary to permit the transfer of certain shares of stock which had been owned by the decedent.

## *The Second Charge.*

The second cause of action by the Oregon State Bar charges the Accused with filing an amended complaint and a second amended complaint in the action filed by the Accused on behalf of Joe L. Wiese and which purported to contain the verified signature of Mr. Wiese, the plaintiff, sworn to before the Accused as notary public when in fact those signatures were not those of Mr. Wiese, but "were subscribed to * * * by the Accused or by somebody else at the direc-

tion of the Accused, who then verified said purported signatures as a Notary Public."

In support of this charge the Oregon State Bar offered in evidence a written report by Robert C. Phillips, an examiner of questioned documents, stating the opinion, based upon comparison with genuine signatures by Mr. Wiese, that "these signatures are forged, identification of the writer is not determined." That letter was received in evidence with the stipulation that Mr. Phillips was qualified as an expert witness and that he would so testify, if called as a witness. It was also stipulated that the signature of the notary public on these documents was that of the Accused.

It was admitted by the Accused that on at least two or three occasions his wife, as his secretary, had put pleadings on his desk with signatures to be notarized; that he had done so, assuming that she had witnessed the signatures and that he knew that this was a bad practice, but that he did not know then that his wife had signed those documents, instead of the client. The Accused also testified that he later talked to a client who told the Accused that he had told the wife of the Accused to sign his name to a pleading, and that the Accused then stopped that practice and also stopped being a notary public.

The wife of the Accused also testified that she once signed the "back" of a complaint with the name of Mr. Wiese, who had authorized her to do so; that she gave that document to the Accused to notarize without explanation, but that he had no knowledge that she had signed the complaint. She also testified that twice clients had signed complaint "backs" which were later notarized by the Accused.

The Trial Board found that the signature on the first amended complaint was not that of the client, but had been placed there by the secretary of the Accused; that there was no evidence that he knew then that she had done so, but that he "admitted that (he) notarized the signature of a client not having seen the

client sign the document and not having contacted the client to inquire whether or not that was in fact his signature." The Trial Board found that as to the second amended complaint the evidence was disputed, but that according to the written report by the examiner of questioned documents, "the signature was not that of the client"; that neither party disputed that evidence, and that the Trial Board "felt constrained to find in accord with the stipulated evidence." Based upon these findings the Trial Board concluded that the Accused was guilty on the second charge. The Disciplinary Review Board agreed with these findings. Again, we agree.

The function of an attorney in acting as a notary public to notarize signatures on affidavits, including the verification of pleadings, is one which imposes a duty upon the attorney that should not be lightly undertaken. An affidavit is "a written declaration under oath." ORS 45.020. For a notary public to "willfully make any false certificate, acknowledgment or jurat" is not only prohibited by statute (ORS 194.310), but is a misdemeanor (ORS 194.990). As held long ago by this court in *Ex parte Finn,* 32 Or 519, 525, 52 P 756 (1898):

"To make such a document legal and authoritative in a court of justice, it takes both the affiant and officer authorized to administer the oath, acting together * * *. Without a direct administration of the oath, there can be no affidavit, under the statute."

When an affidavit is submitted to a court by an attorney who has acted as the notary public, whether or not the affidavit in question is one which verifies the truthfulness of the allegations of a complaint, as in this case, and when, in fact, the document was not signed by the affiant in the presence of the notary and no oath was administered by the notary to the affiant, there is the following "two fold falsity" as stated in *Ex parte Finn, supra,* at 527-28:

"It comprises a false certificate of the administration of an oath, and a false representation that the statements produced are the sworn testimony of witnesses or supposed affiants, entitling them to the

consideration of the court. * * * Such practice is not consistent with truth, nor does it conform to right principles of fair dealing, and is well calculated to impose upon, over reach and mislead the court into a perversion of justice. Conduct in an officer which may lead to such an end cannot receive the sanction of the court as correct."

As held more recently in *In re Walter,* 247 Or 13, 14-15, 427 P2d 96 (1967):

"The statutes, ORS 194.010 et seq. make careful and detailed provisions to safeguard the notarial function and to give all of the assurance that law can give that the notary's function will be properly performed. The validity of a real property transaction is frequently dependent on the notary's performance of duty. A lawyer may violate his oath as an attorney and as a notary when he fails to rigidly adhere to his duty as a notary. A lawyer need not be told that when he acts as a notary in a blind acknowledgment, or if he participates in its doing by others, he easily becomes an accessory to fraud and chargeable with it."

This court has also held that an abuse by an attorney of his duties when acting as a notary public may be so serious as to require his suspension or disbarment from the practice of law. *See Ex parte Finn, supra,* and *In re McAlear,* 179 Or 265, 272-73, 170 P2d 763 (1946). It has also been held, however, that when an attorney who took an acknowledgment to a deed at the request of an associate when he never saw the grantor of the deed, but had no part in and was not aware of any fraud in the transaction, a reprimand would be considered "a minimum penalty." *In re Walter, supra. See also In re Scott,* 255 Or 77, 464 P2d 318 (1970).

For these reasons, attorneys who undertake to exercise the functions of a notary public must constantly bear in mind the seriousness of the possible consequences of a failure to perform such a function in strict accordance with the requirements of the law.

In this case the evidence of abuse by the Accused of his function as a notary public was limited

to two or three instances in which he notarized signatures on pleadings without the presence of the affiant and, necessarily, without administering an oath to the affiant. Fortunately, there is no claim that anyone was misled as a result.

As previously stated, we agree with the finding by the Disciplinary Review Board that the Accused was guilty of both a lack of diligence in the handling of a legal matter entrusted to him and of notarizing the purported signature of a client without having seen the client sign the document and without contacting the client to inquire whether or not it was his signature when, in fact, it was not his signature. We do not, however, agree with its recommendation that a reprimand, rather than suspension from the practice of law, is the appropriate penalty for such misconduct.

Wholly aside from the fact that this is the second occasion in which the Accused has been found guilty of neglect of a legal matter entrusted to him as an attorney by a client, we believe that under the facts and circumstances of this case, including the serious, if not aggravated nature of the misconduct by the Accused, he should be, and he is therefore, suspended from the practice of law for a period of one year.[2] The Oregon State Bar is also awarded judgment against the Accused for its costs and disbursements.

---

[2] It appears from the record of the previous disciplinary proceeding involving the Accused that he not only neglected a legal matter entrusted to him, but deceived his client about that matter. *In re Kraus,* 238 Or 482, 395 P2d 446 (1964). In this disciplinary proceeding the Trial Board disbelieved the testimony by the client that the Accused had lied to him about the legal matter which had been neglected by the Accused.