Argued and submitted on February 10, application for
reinstatement denied February 24, 1981

In the Matter of the Application of

**RENE PLATZER**

For Readmission to Practice Law in
the State of Oregon.

(SC 25748)

624 P2d 128

Roger Tilbury, Portland, argued the cause for petitioner.
With him on the brief were Mark Wehrly and Haessler,
Stamer & Tilbury, Portland.

Glenn H. Prohaska and David Cargo, Portland, for the Oregon State Bar.

Before Denecke, Chief Justice, and Tongue, Lent, Peterson, Tanzer and Campbell, Justices. *

PER CURIAM.

* Peterson, J., did not participate in the decision of this case.

**PER CURIAM.**

This is a proceeding upon an application for reinstatement as a member of the Oregon State Bar by an attorney who had been suspended from membership upon conviction of a crime by a court in West Germany on July 15, 1977.[1] On November 13, 1978, Mr. Platzer filed with this court an application for reinstatement.[2] On July 10, 1979, the court ordered that the application be referred to the Oregon State Bar for hearing before a Trial Board. That hearing was held on May 27 to May 29, 1980.

On August 29, 1980, the Trial Board made findings of fact, as discussed in this opinion, together with the conclusion that Mr. Platzer "possesses sufficient moral character and general fitness to be reinstated as a member in good standing of the Oregon State Bar" and recommended his reinstatement. On October 31, 1980, the Disciplinary Review Board of the Oregon State Bar concurred in the findings, conclusions and recommendations by the Trial Board. Mr. Platzer then filed with this court a

---

[1] Section 4 of the Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement provides:

"If it appears to the court that a member has been convicted of a misdemeanor involving moral turpitude or of a felony, the court may suspend such member summarily. * * * The suspension continues until the former member is reinstated by the court. * * *"

The correctness of the order of suspension by this court, dated July 18, 1978, is not disputed by the applicant.

[2] Section 18 of the same rules provide:

"Any person who has been an active member of the bar, but who has resigned (under Appendix B to these rules) or been disbarred, suspended for professional misconduct for a period of more than six months, suspended for any other reason, enrolled voluntarily as an inactive member for a period of more than six months or enrolled involuntarily as an inactive member, and who desires to be reinstated as an active member or to resume the practice of law in this state (except a person who has been suspended under section 4 of these rules solely for conviction of a misdemeanor involving moral turpitude or of a felony), may be reinstated, as an active member only, on application and compliance with the rules of the court and these rules of procedure and showing, to the satisfaction of the bar and the court, that he has the good moral character and general fitness required for admission to practice law in Oregon and that his resumption of the practice of law in this state will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest. No such person shall resume the practice of law in this state without the recommendation of the bar, unless otherwise ordered by the court on its review of the action and recommendation of the bar. * * *"

petition for the adoption of the decision and recommendation of the Review Board and the Trial Board. The case was then set for oral argument before this court.

It is contended by the Oregon State Bar that in considering this application for reinstatement this court must give conclusive effect to the judgment of the German court convicting Mr. Platzer of the crime of "fraud as an accomplice." For the purposes of proceedings such as this, some courts in the United States accept judgments of courts of other nations convicting persons of crimes as conclusive evidence that such persons were guilty of the crimes for which they were convicted. See Anno. 98 ALR 3d 357. The Trial Board concluded, however, after hearing testimony by Mr. Platzer and witnesses called to testify on his behalf, that Mr. Platzer was denied "procedural due process rights guaranteed by the legal system of this country," with the result that it "need not give full faith and credit to the West German conviction," but that "it may still treat that conviction as some evidence of the moral character and fitness of the applicant."

At the time of oral argument before this court counsel for Mr. Platzer stated that he was in agreement with that conclusion by the Trial Board and that he was also in agreement with its conclusion that the burden of proof was upon Mr. Platzer, and that under this view of the case the primary issue to be decided is whether Mr. Platzer is a person of good moral character and whether he has sustained his burden to prove this by evidence relating not only to the subject matter of the German judgment, but by evidence of his reputation and conduct both before and after entry of that judgment, so as to be entitled to reinstatement as a member of the Oregon State Bar. Counsel for Mr. Platzer also agreed that this court hear this case de novo, as in a suit in equity.

Because we hold, based upon our review of the record and for reasons to be stated, that Mr. Platzer has not sustained that burden of proof, we need not consider the more difficult question whether the West German judgment must be accepted as conclusive evidence that Mr. Platzer committed the crime for which he was convicted by that court or whether it is subject to collateral attack.

*The Conviction of Crime by the West German Court.*

■        On July 15, 1977, a court in West Germany entered a judgment finding that Mr. Platzer was guilty of the offense of "fraud as an accomplice." The fraud in which Mr. Platzer was found to have participated involved a transaction in which one Hans Klenk exchanged certain Flemish paintings, which he claimed to be worth $10,000,000, plus a substantial amount of money, for certain raw emeralds which apparently had little value. Mr. Platzer, then an attorney in West Germany, was to act as trustee for Klenk in making that exchange, for which he was to be paid a fee of 51,000 marks. These facts are conceded. Mr. Platzer now contends, however, that the paintings were bogus and that he did not know that the emeralds were also bogus, so as to be guilty of the crime of aiding and abetting a fraud. He also contends that the judgment of conviction was based upon a confession by him which was not a true or voluntary confession, but was given by him under advice of an attorney as the only way in which he would be released from a prison where he had been illegally detained in solitary confinement for more than two years and was then in very poor health. That attorney appeared before the Trial Board and confirmed that advice. He also testified that he prepared the confession which Mr. Platzer read to the court and expressed the opinion that Mr. Platzer was an "absolutely meticulous man" and "is not capable of committing such a big fraud."

Mr. Platzer also testified at some length that the actual reason for his arrest and confinement was not for participation in that fraud, but because of his activity as an attorney in claims against the West German government on behalf of widows of German pilots killed in crashes of Starfighter aircraft purchased from Lockheed Company in transactions involving payment of bribes to prominent West German officials. He also offered other evidence in support of that charge.

After considering this evidence the Trial Board made the following findings of fact:

"(4)   During his years of law practice both in the State of Oregon and West Germany, the applicant specialized in and handled a large number of reparations cases against

the West German government arising out of the activities of the predecessor German government.

"(5)   Before his arrest the applicant was involved in the respresentation of widows of West German Air Force pilots who had been killed in the line of duty piloting Starfighter planes manufactured by Lockheed and operated by the West German Air Force. These claims were of some general public interest in West Germany and the prosecution of the claims required that the applicant correspond with and make demands upon highly placed West German officials.

"At the time of his arrest the applicant was in the process of making demands upon high German officials for the production of documents and records relating to the purchase and modification of the Starfighters. The applicant had been warned by friends and associates that such action on his part placed him in personal danger.

"(6)   The applicant's decision to enter the plea of guilty was made after lengthy imprisonment, during which he was not actually charged with a specific crime nor permitted to confront his accusers. The decision to plead guilty was made on the advice of counsel familiar with the West German legal system, that the applicant could, and likely would, remain in jail indefinitely without trial if no plea was entered. At the time the decision to enter the plea was made the applicant's physical and mental health was failing and he was under medication. It was represented to the applicant that his incarceration would be promptly terminated if he entered a plea.

"(7)   There is substantial doubt as to whether he actually committed the fraud with which he was charged and to which he pled guilty."

Based upon our examination of the record before the Trial Board, which consists primarily of testimony by Mr. Platzer and of witnesses called by him to testify on his behalf, we may agree that the evidence presented to the Trial Board was sufficient to support its finding, or conclusion, that there is a "substantial doubt" whether Mr. Platzer committed the crime of which he was found guilty by the West German court. It does not follow from that "doubt," however, that Mr. Platzer has sustained his burden to prove that he has good moral character. Indeed, upon examination of the record, including that judgment of conviction, we believe that it is entitled to consideration as at least some evidence to the contrary.

It appears from that judgment - a document of 13 pages - that the proceedings which resulted in that judgment did not involve a simple plea of guilty, based upon a signed confession, after which a judgment of conviction was entered based upon that plea of guilty and confession of guilt. On the contrary, it appears from that judgment that it was based upon proceedings which extended over the whole or parts of three days, during which "statements" were made not only by Mr. Platzer, but also by another defendant and during which various documents were also received. Included in that judgment are the following findings by the West German court, according to the English translation of that judgment in the record of this case:

"* * * The defendant, Mr. Platzer, who until May 13, 1974, knew nothing of the machinations of Magyraffy, Steinwes, and Korber was introduced into the plan completely by these on May 13 and May 14, 1974, with the remark that he would otherwise involve in the fraud affair Heiler. He declared himself with the aim of the fraud in full agreement to this extent. It was agreed that his role would be that of a (fictitious) trustee in order to assure Klenk that everything was safe. He received DM 51,000 in payment by Magyraffy * * * after a successful finish of the fraud-manoever (sic).

"* * * * *

"These facts have established the conviction of the Court and were made known to the Court through the comprehensive and believable confessions by the two defendants and have been confirmed through the documents read in Court during the public sessions. No indications have been found that the defendants, in particular Dr. Platzer as Lawyer, have charged themselves wrongly and nothing speaks for such assumption."

Because of these findings by the German court and because the record in this case does not include a transcript of the proceedings before that court, so as to provide a sufficient basis for consideration of the question whether those findings were either supported or compelled by the proper evidence submitted to that court, a letter was mailed by this court to the parties inquiring, among other things, whether a transcript of those proceedings is important to a proper decision of this case.

As a result, a document entitled "record of proceedings" (with translation in English) was offered in evidence

by the petitioner at the time of oral argument before this court and was received on stipulation by counsel for the Oregon State Bar. Upon examination of that record, however, we not only find nothing to support the contentions by Mr. Platzer, but find, on the contrary, at least some evidence to support the foregoing findings by the German court.

This "record of proceedings" is not a transcript of the proceedings or even a summary of the testimony taken during the three days of those proceedings. It is again clear from that "record," however, that this was not a simple criminal case in which a defendant plead guilty or even a case in which a finding of guilt is based upon a written or oral confession of guilt.

On the contrary, it appears from that English translation of this "record of proceedings" that during the first day of such proceedings, which extended over the whole or parts of three days, Mr. Platzer "declared himself to the matter," and "answered to questions of the prosecutor and the court" and that after a "continuance" he then "declared himself further to the matter." It also appears that on the second day Mr. Platzer, after being shown a letter from a co-defendant, again "declared himself upon questions of the court and the prosecutor"; that after the reading of another letter he again "declared himself upon questions of his defense counsel"; that after reading of the trust agreement he "declared himself thereto upon question"; that upon reading other documents and letters he again "declared himself thereto" upon questions of the court, the prosecutor and his defense counsel. It also appears that on the third day Mr. Platzer again "declared himself" upon questions of the prosecutor and by his defense counsel.

In addition, it appears from this "record of proceedings" that a co-defendant also made numerous "declarations" in response to questions by the prosecutor and court and that numerous documents were offered in evidence.

Based upon such a record, we seriously question whether this court can properly find or conclude that the findings by the German court, as previously set forth,

which were based not only upon the declarations of Mr. Platzer, but also upon those of the co-defendant and upon the numerous documents offered in evidence, were not correct, even assuming that Mr. Platzer had been held improperly in prison for over two years and that he "confessed" on advice of counsel. In any event, upon consideration of the record made available to this court in the context of the issue presented to this court for decision, as agreed upon by counsel for Mr. Platzer and as previously stated, we are of the opinion that the judgment of that court is at least "some evidence" that Mr. Platzer was not at that time a person of good moral character.

## *Other Conduct by Mr. Platzer.*

■ Regardless of what legal effect may properly be given to the judgment of the German court for the purposes of Section 4 of our Rules of Procedure, supra, note 1, we find that Mr. Platzer has failed to sustain his burden to prove that he has otherwise been and now is a person of good moral character. The Trial Board found that Mr. Platzer was a person of good moral character both before and after his conviction by the West German court. We disagree.

### (a) *The Gens claim.*

Mr. Platzer, a lawyer in Germany, came to Oregon in 1956, attended law school, and was admitted to the Oregon State Bar in 1960. During the course of his practice of law in Oregon he represented many Jewish people who had been deprived of their property in Germany in claims against the West German government. Mr. Platzer testified that he was 80% successful in such claims and that in 1967 he returned to Germany so as to be better able to handle such claims.

After his return to Germany Mr. Platzer was also referred some such claims by an attorney in Portland on behalf of clients represented by him. Those claims were handled by Mr. Platzer on 20% contingent fee basis. That attorney testified before the Trial Board that he had revoked a power of attorney given by a Mrs. Gens, one of such clients, to Mr. Platzer, authorizing him to handle her claim, after Mr. Platzer had written a letter to the Portland attorney saying that her claim had been denied by the

lower German court and saying also that he had appealed to an appeals court and was awaiting a court-ordered medical opinion. That Portland attorney also testified that Mr. Platzer then wrote a second letter saying that the medical opinion had been negative; that he would try to bring somebody else in, but that would cost an additional 4,000 marks (then about $1,000), and that the matter would be handled "discreetly." The attorney also testified that upon inquiry he found that the lower German court had allowed, not denied, the claim; that it was the German government that was appealing, and that a final medical opinion had been obtained which was not negative, but positive and favorable.

That Portland attorney also testified that in several other cases involving persons who "did not want to get involved" he

"* * * saw cases with my own eyes where this demand for 4,000 marks had been made, * * * and in the same way."

and that

"I have heard of a number of cases where towards the end he said he would have to have an extra four thousand * * * - 'I cannot tell you what for' and to 'please handle it discreetly', giving the impression that, to me, * * * something wasn't right there."

In the trial brief of 49 pages (plus appendix) filed on behalf of Mr. Platzer with the Trial Board, it was stated that inspection of the "Bar files by defense counsel" revealed "nothing of a derogatory nature" except "one letter" from that Portland attorney "which is discussed infra, and which is easily explainable." We find no such discussion of that letter in that trial brief. After the testimony of that attorney, however, Mr. Platzer gave the following explanation of his letter about the Gens claim:

"Q: * * * Are you certain [at] this time that at the time you wrote the letter you did not know of the positive opinion of Dr. Wuttke?"

"A: Yes, I'm absolutely certain about it."

"* * * * *

"Q: * * * [I]n the letter you say that the decision of the Landgericht went against Mrs. Gens."

"A: Yes."

"Q: Is that - were you correct or not?"

"A: Actually looking back now, this was of no importance to me whether the Landgericht decision was negative or positive because she knew about it already and this was, I just don't know why I wrote this down there. * * *"

Mr. Platzer also testified that it was a "mistake" when he said that the court opinion went "the other way when in fact it was in her favor," but that "she knew about it and was very happy about it."

His explanation of the reference in his letter to the Portland attorney to "handling the matter discreetly" was that:

"I didn't want her to know anything and I didn't want to tell Mr. _____ I needed a thousand dollars for an expert opinion because this was not so. I didn't know what the expert opinion would cost. I wanted to have extra expenses because I was ready at this time to try a settlement."

that:

"I was never asking anybody for a thousand dollars. To make it clear now, what we're talking about, only contingent upon success."

and that:

"This thousand dollar business of course sounds bad for somebody who just doesn't understand the situation of restitution cases because the laws were very loose."

Also offered in evidence was an affidavit by a German attorney to the effect that the handling of the *Gens* claim by Mr. Platzer was entirely proper. Attorneys representing the Oregon State Bar at the hearing before the Trial Board disclaimed any contention that Mr. Platzer "took expense money and used it improperly." They contend, however, that at the least these letters demonstrate a lack of candor by Mr. Platzer in communications with his clients. We agree.

It may be that Mr. Platzer's handling of that matter was proper under German law and from the standpoint of a German lawyer. It may also be that these letters by Mr. Platzer do not directly demonstrate that he has not been a man of good moral character. We cannot, however, approve the writing of such letters by a member of the Oregon State Bar to his clients, and Mr. Platzer was a member of the Oregon State Bar at that time. We also believe that the

writing of such letters by Mr. Platzer must be considered by this court as evidence that since his conviction by the West German court Mr. Platzer has not been a person of good moral character.

(b) *The Petition for Change of Name.*

In August or September 1978, Mr. Platzer filed in Multnomah County, Oregon, a petition for a change of his name. The petition, which included a certificate signed by Mr. Platzer under oath on August 22, 1978, that it was "true and correct in all respects," stated that "[p]etitioner has never been convicted of a crime." That statement was material, to say the least, because of the obvious possibility of the abuse of such petitions by persons who have been convicted of crimes and the resulting likelihood that a court, knowing that such a petitioner has been convicted of a crime, would deny such a petition.

Surprisingly, no reference was made to this matter by the Trial Board and no contention was made with reference to it by the Oregon State Bar, which filed no brief in response to the lengthy brief submitted to the Trial Board on behalf of Mr. Platzer.

In our view, however, this is a serious matter. Because of his previous conviction of a crime by the West German court, that statement by Mr. Platzer was false. At the hearing before the Trial Board Mr. Platzer testified that the reason for that statement was that he was then "very strongly of the opinion that * * * such a conviction never could have come about in the United States." He would also excuse that misstatement upon the ground that it was made upon the advice of his attorney. We cannot accept such excuses. Mr. Platzer, as an attorney himself, knew very well that he had been convicted of a crime by a German court, even though he may have believed himself innocent of that crime.

Mr. Platzer's only other excuse was that "Judge Deiz knew of the conviction" when she signed the order granting the name change. Even if such knowledge by a judge could excuse such a false statement under oath in a petition to the court, it does not appear from the record whether at the time Mr. Platzer's attorney presented the petition Judge Deiz was informed by him of that fact, as

she should have been, at the least, or whether it is the contention of Mr. Platzer that she knew of that fact from some other source. Judge Deiz was not called as a witness and there was no transcript of those proceedings.

In other proceedings this court has had occasion to discipline attorneys who make false statements under oath, in spite of innocent intentions. *See, e.g., In re Kraus,* 289 Or 661, 669-70, 616 P2d 1173 (1980), and cases cited. In our opinion, this court must consider the false statement by Mr. Platzer on his petition for change of name as further evidence that since his conviction by the West German court he has not been a person of good moral character.

Testimony of other witnesses and affidavits of other persons were offered in evidence to the effect that Mr. Platzer has been an honest person and that he has had a good reputation for truth and veracity. After reviewing the entire record, however, we are of the opinion that Mr. Platzer has not sustained his burden of proof that he is a person of good moral character so as to be entitled to reinstatement as a member of the Oregon State Bar.

The application for reinstatement is denied.