Argued and submitted January 23, accused suspended from the practice of law for one year July 5, 1991, commencing on the effective date of this decision

In re Complaint as to the Conduct of

# Harry V. BENSON,
*Accused.*

## (OSB 86-4; SC S37453)

814 P2d 507

Christopher R. Hardman, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Marvin S. Nepom, Portland, argued the cause and filed the brief for the accused.

PER CURIAM

## PER CURIAM

This is a disciplinary proceeding instituted by the Oregon State Bar, charging the accused with violations of several statutes and provisions of the Code of Professional Responsibility. The trial panel found the accused guilty of all the charges and imposed a public reprimand. On *de novo* review, ORS 9.536(3), we find the accused guilty of all the charges and suspend him from the practice of law for one year.

## FACTS

The accused, a member of the Oregon State Bar, is vice president of Lincoln Loan Company, which holds title as "nominee" to various parcels of real estate owned by the accused's family. During the time relevant to this proceeding, the accused handled the legal affairs of Lincoln Loan Company. The events described below occurred in the course of the accused's representation of Lincoln Loan Company.

In April 1984, the accused, his brother Fred Benson, and his nephew John Benson (Fred Benson's son) held separate accounts in Lincoln Loan Company. On April 28, 1984, Fred and John Benson died in an automobile accident. About 15 months later, the accused recorded a deed (Deed I) in Multnomah County that conveyed real property owned by John Benson to Lincoln Loan Company. Deed I, dated April 26, 1984, bore the signature of John Benson. The accused signed the deed as notary.

At about the time that Deed I was recorded, the accused recorded a second deed (Deed II) in Deschutes County that conveyed real property owned by John Benson to Lincoln Loan Company. Deed II was prepared on a different form from that used for Deed I. Deed II contained the signature "John E. Benson." The accused signed the deed as notary with a jurat bearing the following words:

> "State of Oregon, County of Multnomah, April 26, 1984. Personally appeared the above named John E. Benson and acknowledged the foregoing instrument to be his voluntary act and deed. Before me [accused's signature] Notary Public for Oregon, My commission expires 11-9-85."

At the time of his death, John Benson was sharing living quarters at Sunriver, Oregon, with a woman named Debbie James. A "living arrangement agreement" between James and John prevented James from acquiring any interest in John's property.

After John Benson died, the accused entered into an agreement with James that allowed her to continue to live in John Benson's house rent-free, in exchange for her managing John Benson's other properties in Sunriver. After she became dissatisfied with that arrangement, James notified the accused's son that she would file a claim to acquire title to the house and to obtain compensation for her work in managing Benson's properties. Shortly thereafter, the accused recorded Deed II in Deschutes County. James later discovered Deed II while working at a real estate office in Sunriver. Deed II aroused her suspicions, and she eventually complained to the Bar that it was a forgery. The Bar then initiated the present proceedings.

At the accused's hearing before the trial panel, the Bar presented the evidence of a handwriting expert that John Benson's signature on Deed II was forged. The expert further opined that Benson's signature on Deed I probably was genuine and that Deed I and Deed II were prepared on different typewriters. The Bar also presented evidence that the accused had notarized blank bargain and sale deeds in order to facilitate the future transfer of title of property to Lincoln Loan Company.

The accused testified that John Benson signed both Deed I and Deed II on April 26, 1984, in Lincoln Loan Company's office. The accused testified further that no person other than he, John, and Fred Benson was present at that time. The accused testified that he had prepared both deeds on his typewriter and that he gave them to John for his signature while John stood at the counter. The accused testified that the deeds were returned to the accused with John's signature and that the accused then notarized them.

The trial panel found that the signature on Deed II was forged, that the jurat was false, because John Benson had not personally appeared and acknowledged his signature, and that the accused knew that the jurat was false when he affixed

his notarial seal. The trial panel concluded that the accused had violated ORS 194.515(1), (3) and (6), *former* ORS 194.310(3) (*repealed by* Or Laws 1989, ch 976, § 37), ORS 9.527(4), and *former* DR 1-102(A)(3), DR 1-102(A)(4) (renumbered DR 1-102(A)(3)), and DR 7-102(A)(8). The trial panel imposed the sanction of a public reprimand.

The Bar asks that this court impose a sanction greater than that imposed by the trial panel and suspend the accused from the practice of law for at least 6 months. We agree with the trial panel's findings of fact, but agree with the Bar that the accused's acts require a greater sanction. We suspend the accused from the practice of law for one year.

## STATUTORY AND DISCIPLINARY RULE VIOLATIONS

There is clear and convincing evidence in the record that the signature "John E. Benson" on Deed II was forged. The testimony of the handwriting expert proved that the signature's writing style and form were grossly different from authentic signatures of John Benson. Additional evidence disproves the accused's account of the execution of Deed II. A different form had been used for each deed, and the evidence shows that Deed II was prepared on a different typewriter than the one used for Deed I. The evidence also shows that the accused had a practice of notarizing blank bargain and sale deeds.

John Benson did not "personally appear" before the accused and "acknowledge the instrument as his voluntary deed and act" when the accused notarized Deed II. The accused, therefore, knowingly executed a false jurat when he affixed his notarial seal. That conduct violates ORS 194.515(1), (3) and (6),[1] and *former* ORS

---

[1] The relevant provisions of ORS 194.515 provide:

"(1) In taking an acknowledgement, the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the officer and making the acknowledgement is the person whose true signature is on the instrument.

"* * * * *

"(3) In witnessing or attesting a signature the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the signature is that of the person appearing before the officer and named therein.

"* * * * *

194.310(3).[2]

Violation of *former* ORS 194.310(3) was a misdemeanor, ORS 194.990 (*amended by* Or Laws 1989, ch 976, § 34). In violating *former* ORS 194.310(3), the accused also violated DR 7-102(A)(8)[3] and ORS 9.527(4).[4] *See In re Hawkins,* 305 Or 319, 324-25, 751 P2d 780 (1988) (lawyer who wilfully made a false jurat violated DR 7-102(A)(8) and ORS 9.527(4)). By recording a deed containing a false signature, the accused also violated DR 1-102(A)(4)[5] (renumbered DR 1-102(A)(3)), because his act was a misrepresentation. *See In re Hawkins, supra,* 305 Or at 324-25 (lawyer violated DR 1-102(A)(3) when he filed false affidavit). *See also In re Kraus,* 289 Or 661, 667-71, 616 P2d 1173 (1980) (lawyer disciplined for notarizing the purported signature of a client without seeing the client sign the document).

---

"(6) A notarial officer has satisfactory evidence that a person is the person whose true signature is on a document if that person (a) is personally known to the notarial officer, (b) is identified upon the oath or affirmation of a credible witness personally known to the notarial officer or (c) is identified on the basis of identification documents."

[2] *Former* ORS 194.310(3) (*repealed by* Or Laws 1989, ch 976, § 37), in effect at the time of the accused's misconduct, provided:

"A notary public, in the exercise of the powers or in the performance of duties, shall not practice any fraud or deceit, or wilfully make any false certificate, acknowledgement or jurat."

[3] DR 7-102(A)(8) provides:

"(A) In his representation of a client, a lawyer shall not:
"* * * * *

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

[4] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:
"* * * * *

"(4) The member is guilty of wilful deceit or misconduct in the legal profession."

[5] At the time the accused recorded Deed II in Deschutes County, DR 1-102(A)(4) provided:

"(A) A lawyer shall not:
"* * * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

This Rule currently is numbered DR 1-102(A)(3).

*Former* DR 1-102(A)(3), in effect at the time of the accused's misconduct, provided:

"(A)   A lawyer shall not:

"* * * * *

"(3)   Engage in illegal conduct involving moral turpitude."

In this case, the accused intentionally notarized a deed containing a forged signature. Because his actions violated ORS 194.990, he engaged in illegal conduct. That conduct also involved "moral turpitude." *See In re Sonderen,* 303 Or 129, 133, 734 P2d 348 (1987) ("in order to involve moral turpitude, [the conduct] must require intent and must include as an element fraud, deceit, dishonesty, harm to a specific victim or illegal activity undertaken for personal gain"). The accused, therefore, violated *former* DR 1-102(A)(3).

## THE SANCTION

We are guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (1986) (ABA Standards) in determining the appropriate sanction. *See, e.g., In re Recker,* 309 Or 633, 639, 789 P2d 663 (1990) (using ABA Standards for guidance). Using those standards, we ask four questions:

(1)   What is the nature of the ethical duty violated?

(2)   What was the lawyer's mental state?

(3)   What was the extent of the actual or potential injury caused by the lawyer's misconduct?

(4)   Are there any aggravating or mitigating circumstances?

ABA Standards at 25, Standard 3.0.

The duty violated by the accused's misconduct was one owed to the public. *Id.* at 36, Standard 5.1. The accused acted with a conscious objective to deceive anyone who might have an interest in or claim against the property described in Deed II by executing and recording a deed with a false jurat. The accused thus acted with intent. *Id.* at 7.

The accused's misconduct, however, caused no actual injury. Although this court can envision potential injury caused by misconduct of this kind, the Bar neither

asserts nor offers any evidence of potential injury in this instance. Under the peculiar circumstances of this case, we are unable to find by clear and convincing evidence that the accused's misconduct caused potential injury. The record demonstrates that the Benson family agreed to transfer John Benson's property into the account of John Benson's mother, Marian Benson, shortly after John's death. The accused did not execute and record Deed II until 15 months after John's death. The purpose of recording Deed II was to avoid probate. Had Deed II not been prepared and recorded and had the property entered probate, however, the property would have passed to Marian Benson as his intestate survivor. ORS 112.045(2). The accused's misconduct, therefore, did not result in the property being conveyed to anyone other than to its rightful owner, Marian Benson. Furthermore, because the decision to transfer the property to Marian Benson was made before the accused recorded Deed II, there was no potential injury to Marian Benson.[6] We note, however, that although the lack of any actual injury in this case inures to the accused's benefit, it is not to his credit.

There are several aggravating factors. The accused exhibited a pattern of misconduct, *id.* at 49, Standard 9.22(c), in that he prepared and notarized blank bargain and sale deeds. Because the accused steadfastly continues to claim that John Benson signed Deed II in his presence and that he did not notarize the document falsely, the accused also submitted false statements during the disciplinary process. *Id.,* Standard 9.22(f). Moreover, the accused has been a member of the Oregon State Bar for 39 years and should have been aware that his conduct was unlawful and, thus, unprofessional. *Id.,* Standard 9.22(i).

Mitigating factors include absence of a prior disciplinary record. *Id.* at 50, Standard 9.32(a). There also is no clear and convincing evidence of a selfish motive, *id.,* Standard 9.32(b), in that the Bar has not proved that the accused acted to benefit himself.[7]

---

[6] The Bar offered no evidence that the accused evaded paying any fees, expenses, or taxes by avoiding probate.

[7] The Bar contends that the accused acted with a dishonest or selfish motive, an aggravating factor under Standard 9.22(b). The Bar argues that the accused recorded the deed with a false jurat in order to prevent Debbie James from

The accused's misconduct is serious. This court previously has reminded lawyers who exercise the functions of a notary public that they "must constantly bear in mind the seriousness of the possible consequences of a failure to perform such a function in strict accordance with the requirements of the law." *In re Kraus, supra,* 289 Or at 670. ABA Standard 6.11 provides that, in the absence of aggravating or mitigating circumstances, "disbarment is generally appropriate when a lawyer, with the intent to deceive the court, * * * submits a false document[.]" In the light of the mitigating factors noted, and because the accused's misconduct did not in fact cause any injury or potential injury, we choose a less severe sanction in this instance.

The accused's denial of his misconduct during the course of the disciplinary proceeding and before this court, along with the remaining aggravating factors, makes a one-year suspension appropriate. We find it significant that the accused asserted before the trial panel and continued to assert in his brief in this court that John Benson signed Deed II in his presence and thus that his jurat was not false.

A one-year suspension is appropriate in view of our past holdings involving lawyers who falsely notarized documents. *See In re Kraus, supra,* 289 Or at 661 (lawyer who notarized the purported signature of a client without presence of affiant and who lacked diligence in the handling of a legal matter suspended for one year); *In re Hawkins, supra,* 305 Or at 319 (lawyer disbarred for execution of false jurat, use of evidence which he knew to be false, and his filing of false affidavit); *Ex parte Finn,* 32 Or 519, 52 P 756 (1898) (lawyer suspended for one year for affixing his notarial jurat to false affidavits). *Cf. In re Walter,* 247 Or 13, 427 P2d 96 (1967) (lawyer who wrongfully executed acknowledgement on deed at request of his partner, unaware that the transaction was fraudulent, was reprimanded).

The accused is suspended from the practice of law for a period of one year commencing on the effective date of this decision. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).

---

successfully claiming any interest in the property. We do not find clear and convincing evidence to support that argument.